FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

OCT 15 2002

Robert M. March
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FRANK MCMAHAN,

Petitioner,

v.                                                          Civ. No. 00-1116 JC\RLP

ERASMO BRAVO, et al.,

Respondents.

## MAGISTRATE JUDGE'S PROPOSED
## FINDINGS AND RECOMMENDED DISPOSITION[1]

1.   This is a proceeding for a writ of habeas corpus, filed July 31, 2000, and brought pursuant to 28 U.S.C. § 2254. After reviewing the record, counsel was appointed to represent Mr. McMahan and briefing has been completed by the parties. After a jury trial, Mr. McMahan was found guilty of several crimes, discussed below, and sentenced to life imprisonment, following by 18 years' imprisonment and five years' parole. See Answer, Exhibit B thereto ("Amended Judgment, Sentence and Commitment"). Mr. McMahan filed a direct appeal and the New Mexico State Supreme Court ("NMSC") affirmed his convictions in an unpublished decision. See Exhibit J. Mr. McMahan's petition for writ of habeas corpus, Exhibit L, was summarily denied by the state court trial judge. Exhibit M. On May 1, 2000, the NMSC denied his writ of certiorari. Exhibit N.

---

[1] Within ten (10) days after a party is served with a copy of this Proposed Findings and Recommended Disposition (hereinafter "Proposed Findings") that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections in the United States District Court to the Proposed Findings. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the Proposed Findings. If no objections are filed, no appellate review will be allowed.

2.  For the facts of the case, Mr. McMahan relies on the NMSC's statement of facts in its decision. *See* Memorandum Brief at 3.

> On October 24, 1994, Frank McMahan arrived in Glenwood to visit his ex-wife, Josie McMahan. The next day, McMahan borrowed his son James' Jeep and picked up Jerry Dunlop (Dunlop) in Deming. Both spent the night in Silver City and did not return the vehicle until the evening of Wednesday, October 25, 1994. James drove McMahan to Glenwood's Crabapple Motel because he had been drinking and was not welcome at Jose McMahan's residence. McMahan met with Dunlop at the motel. That evening, Dunlop went to the Blue Front bar in Glenwood where he began drinking and flashing a Smith & Wesson revolver.
>
> On the evening of Wednesday, October 25, 1994, Vernon Holliman discovered that his Glenwood ranch had been burglarized sometime earlier in the day and discovered the theft of a .308 Browning rifle, a 5-shot Smith & Wesson pistol, and some jewelry. Also on Wednesday, McMahan pawned his fiddle and Dunlop pawned the stolen Browning .308 rifle at the Silver Pawn Shop. The next morning, James McMahan found a bag of jewelry underneath the driver's seat of his Jeep which had been returned to him. A few days later, after hearing about the burglary, James returned the jewelry to Holliman.
>
> Throughout the morning and early afternoon of Thursday, October 26, 1994, McMahan and Dunlop unsuccessfully attempted to secure a ride from Glenwood to Silver City. Jim Mater witnessed McMahan and Dunlop walking near Josie McMahan's house and Agnes Lorentzen's home. Later that afternoon, at approximately 2:10 p.m., Mater and Maggie O'Brien saw them walking near Lorentzen's home and carrying an object. At about 3:00 p.m., Judith Truitt, Lorentzen's neighbor, heard a single gunshot from the direction of Lorentzen's home. Later, at approximately 3:30 p.m., Leah Jones called Frank McMahan at Josie McMahan's residence and asked whether he still needed a ride. In a normal voice, he told her that "it's too late now."
>
> At 5:15 p.m., Tonya Lorentzen, Agnes' daughter-in-law, found Agnes Lorentzen dead. Medical examiners later determined

2

> that she had been shot to death. On Friday, October 28, 1994, it was discovered that Lorentzen's blue Honda had been stolen from the garage.
>
> McMahan and Dunlop drove the stolen Honda to Silver City. Along the way, at approximately 3:45 p.m., they were stopped at a highway construction roadblock. A construction worker who had known McMahan for about 15 years walked up to the car and chatted with him briefly without incident. Also, Lee Pierce, another acquaintance of McMahan's, drove past McMahan, waved and honked, but McMahan turned away and did not return the greeting and made no gestures indicating that he needed help. McMahan and Dunlop stopped at a Silver City liquor store where both went in and bought a bottle of Vodka which they drank on the drive to Las Cruces.
>
> In Las Cruces, Officer Ernest DiMatteo attempted to effect a traffic stop after he observed the Honda nearly force other vehicles off the road. McMahan pulled over and Dunlop jumped out of the passenger door, fired shots at Dimatteo (*sic*) and jumped back in the vehicle. McMahan and Dunlop fled at high speed on Interstate-25 while Dunlop continued to fire at the officer. Seven miles later, the car pulled to the shoulder, Dunlop again jumped out of the vehicle and fired at the officer. Dunlop got back in the car and the pursuit continued with several more shots fired at DiMatteo. The car pulled over again and both Dunlop and McMahan exited the vehicle. Dunlop continued to fire and jumped back in the car and sped off leaving McMahan behind. DiMatteo ordered McMahan to remain where he was and continued his pursuit. After DiMatteo left, McMahan began to flee but two bystanders were able to detain him until other law enforcement officers arrived at the scene. An officer at the scene testified that McMahan claimed that he was held hostage and believed that McMahan "was at the wrong place at the wrong time" and appeared to be Dunlop's victim. . . .

Decision, Exhibit J, at 2-3.

    3.    Pursuant to the Amended Judgment, Mr. McMahan was found guilty and convicted of Felony Murder (Count I), Unlawful Taking of a Motor Vehicle (Count III),

3

Possession of a Stolen Vehicle (Count IV), Larceny Under One Hundred Dollars (Count V), Aggravated Burglary (Count VI), Larceny of a Firearm (Count VII), Disposing of Stolen Property (Count VIII), Receipt, Transportation or Possession of Firearm by a Felon (Count X), and Conspiracy to Commit Murder (Count XII). The sentence was enhanced because the victim, Ms. Lorentzen, was over 65 years old and a firearm was used in the commission of the crimes. Mr. McMahan was also found to be an habitual offender. At the state's request, the court set aside Mr. McMahan's conviction for armed robbery, the underlying felony for the felony murder count, on the ground of double jeopardy. See Amended Judgment, Exhibit B, at 3; *State v. Lopez*, 920 P.2d 1017, 1024 (N.M. 1996). The Amended Judgment was entered March 21, 1997.

4.     As grounds for his petition, Mr. McMahan raises the following claims: (i) whether he was convicted on insufficient evidence in violation of his due process rights; (ii) whether his due process rights were violated by the police officers' coercive and procedurally inadequate interrogation, resulting in statements used against him at trial; (iii) whether improper comments by the trial court violated his due process rights; (iv) whether he received constitutionally ineffective assistance of counsel at trial; and (v) whether his due process rights were violated by prosecutorial misconduct.

5.     The parties argue about the standard of review to be applied by this court. The NMSC's Decision concerned a claim not raised in Mr. McMahan's federal petition; with regard to the claims also raised herein, the NMSC stated that it found "no merit in McMahan's other claims that insufficient evidence exists to support his convictions; that his felony-murder and armed robbery convictions violate double jeopardy principles; that his

4

statements to the police should have been suppressed; . . . and that the judge made improper comments in the presence of the jury." Decision, Exhibit J, at 9. The Respondent argues this constitutes analysis, Mr. McMahan argues to the contrary.

6. It is difficult to tell what the NMSC considered, given that it did not discuss any issue or cite any case law. For example, it stated that the double jeopardy claim was without merit in its April 26, 1999 Decision. On December 2, 1998, counsel for Mr. McMahan had filed a supplemental brief arguing the conviction for both felony murder and armed robbery violated double jeopardy. Exhibit H. The State filed its response saying the armed robbery conviction had been dismissed prior to judgment being entered on October 4, 1996. Exhibit I. In reality, not until the Amended Judgment was entered on March 21, 1997 was that conviction set aside. Exhibit B. It is impossible to tell whether the NMSC meant that this issue was without merit because it did not violate double jeopardy, which would clearly be wrong, see *State v. Contreras*, 903 P.2d 228, 231 (N.M. 1995); or whether the NMSC meant it was without merit because the conviction had already been set aside. Regardless, this court applies *Aycox v. Lytle*, 196 F3d. 1174 (10th Cir. 1999) to this situation:

> we must uphold the state court's summary decision unless our independent review of the record and pertinent federal law persuades us that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented.

*Id.* at 1178. As the court noted, an "independent review" differs from a "full de novo review" of a petitioner's claims. *Id.* (citing *Delgado v. Lewis*, 181 F.3d 1087, 1091 n.3 (9th

Cir. 1998), *rev'd on other grounds, Lewis v. Delgado*, 528 U.S. 1133 (2000)). This court owes "deference to the state court's *result*, even if its reasoning is not expressly stated. 196 F.3d at 1177 (emphasis by the court).

7. Accordingly, based on this court's independent review of the record, the state court decision must be upheld unless the result "contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178; *see Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); § 2254(d)(1) & (2).

8. **Insufficiency of the evidence**. Mr. McMahan first argues that he was denied due process by the trial court's submission of the charges to the jury and the conviction on those charges because the evidence was insufficient. The constitutional standard for claims that petitioner was convicted on insufficient evidence is set out in *Jackson v. Virginia*, 442 U.S. 307 (1979): "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis by the Court).

10. Mr. McMahan contends that the evidence used to convict him of all counts consisted of unreasonable inferences drawn from circumstantial evidence. "While the jury may draw reasonable inferences from direct or circumstantial evidence, an inference must be more than speculation and conjecture to be reasonable, and caution must be taken that the conviction not be obtained by piling inference on inference." *United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 1995) (internal quotation marks and citations omitted).

6

11. The jury instruction given at McMahan's trial reads in pertinent part:

The defendant Frank McMahan may be found guilty of felony murder as charged in Count I, even though he himself did not commit the murder if the state proves to your satisfaction beyond a reasonable doubt that:

1. The felony of armed robbery was committed under circumstances or in a manner dangerous to human life;

2. The defendant Frank McMahan helped, encouraged or caused the felony of armed robbery to be committed or attempted;

3. The defendant Frank McMahan intended that the armed robbery be committed;

4. During the commission of the felony Agnes Lorentzen was killed;

5. The defendant Frank McMahan helped, encouraged or caused the killing to be committed;

6. The defendant Frank McMahan intended the killing to occur or knew that he was helping to create a strong probability of death or great bodily harm.

Volume IV, Record Proper, Instruction No. 5 at 001034.

12. A rational juror could have found the essential elements of the crime of felony murder beyond a reasonable doubt. Viewing the facts in the light in favor of the prosecution, Frank McMahan was keeping company with Jerry Dunlop and the two were drinking during their time together, the day before and the day of the murder. The home of McMahan's former employer was robbed and items from that house were found in a vehicle used by McMahan and Dunlop. The two men pawned items the day of the murder, were seen together in the vicinity of the decedent's house close to the time of the murder.

On the day after the murder, McMahan was having breakfast with Dunlop and introduced him to Vernon Holliman. They were driving the decedent's vehicle at the time of capture. All of these factors support the charge that McMahan was a willing accomplice in the robbery and murder of Alice Lorentzen and that he was not acting under duress.

13. **Failure to suppress statements**. Mr. McMahan argues that because he was intoxicated at the time of his interrogation by the police his statements were not voluntary. Clearly established Supreme Court precedent requires consideration of whether Mr. McMahan appreciated the consequences of his actions; *i.e.*, whether the waiver of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) was knowing and voluntary. The pertinent inquiry is whether the statements were the product of a free and deliberate choice rather than the result of police intimidation, coercion, or deception. *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

14. Mr. McMahan states only that he was intoxicated and the police knew that he had been drinking. He concludes that because his interrogation followed a high-speed chase and shootout and then four hours of detention in a holding cell, the totality of the circumstances indicate that the failure to suppress his statements violated his right against self-incrimination and right to due process. These conclusory statements fall far short of indicating an involuntary waiver of *Miranda* rights. Mr. McMahan does not even claim that his statement was involuntary. This claim is without merit.

15. **Judicial bias**. Mr. McMahan claims he was deprived of a fair trial because the trial judge (1) announced to the jury that the prosecutor had been appointed to the bench; and (2) made some comments about a sentencing he had had earlier. A habeas

petitioner may show bias in one of two ways: "First, he may demonstrate actual bias . . . [o]r, he may demonstrate that circumstances were such that an appearance of bias created a conclusive presumption of actual bias. *Fero v. Kerby*, 39 F.3d 1462, 1478 (10th Cir. 1994) (citing *In re Murchison*, 349 U.S. 133, 136 (1955)), *cert. denied*, 515 U.S. 1122 (1995). Actual bias requires compelling evidence in support thereof. *Id.* The remarks by the trial judge do not rise to the level of actual bias.

16. The appearance of bias "must rest on there being an appearance of bias sufficient to override the presumption of honesty and integrity." *Id.* The appearance of bias does not rise to the level of a due process violation unless the judge "'is faced with circumstances that present some [actual] incentive to find one way or the other . . . .'" *Id.* (quoting *Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d 1363, 1372 (7th Cir. 1994) (*en banc*)) (additional internal quotation marks omitted; citations omitted by the court). The court cautioned, however, that there must be an incentive for actual bias. *Id.* The remarks made by the trial judge do not create an appearance of bias, nor is there anything in the record to indicate that the judge had any incentive in the outcome. According, Mr. McMahan's claims of judicial bias fail.

17. **Ineffective assistance of counsel.** Mr. McMahan argues that he received constitutionally ineffective assistance of counsel. To establish ineffective assistance of counsel, a petitioner must prove that counsel's performance was constitutionally deficient and that counsel's deficient performance prejudiced the defense, depriving the petitioner of a fair trial with a reliable result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The court, in deciding an ineffective assistance of counsel claim, must judge the

reasonableness of counsel's challenged conduct under the then-existing facts of each case and in so doing, should keep in mind that counsel's function is to make the adversarial testing process work in the particular case. *Id.* at 690.

18. Mr. McMahan argues that counsel was ineffective for not allowing Mr. McMahan to testify at trial. The court can find no such claim in either the state habeas petition or the federal habeas petition. *See* Exhibit L to Answer at 3(s) & 3(x); Petition [Doc. 1] at 6(s) & 6(x).[2] If the claim was not raised in the state court, it cannot be raised in the memorandum brief and will not be considered. *Picard v. Conner*, 404 U.S. 270, 275 (1971). In the event the court has overlooked this claim, it is nonetheless denied. Mr. McMahan's conclusory arguments are without record support. *See* Memorandum Brief [Doc. 28] at 20 ("The assertion that Mr. McMahan's counsel did not allow him to testify in his own defense at trial is particularly disturbing.") This falls far short of the "overt coercion" necessary for an ineffective assistance claim when the right to testify is at issue. *See Wimberly v. McKune*, 141 F.3d 1187, \*\*2 (10th Cir. 1998) (unpublished) (citing *Lema v. United States*, 987 F.2d 48, 52-53 (1st Cir. 1993)).

19. Mr. McMahan's other examples of ineffective assistance are excessive tardiness by trial counsel and failure to investigate. As to the first claim, there is no evidence that tardiness affected the outcome or rendered the verdict unreliable. *Strickland*. As to the second claim, Mr. McMahan does not set forth what a thorough

---

[2] Mr. McMahan did argue in his state and federal petitions that he should have been allowed to testify at the pretrial hearing but, as noted by the Respondent, Mr. McMahan did testify at the pretrial hearing. This claim cannot be enlarged to encompass testifying at trial.

10

investigation would have shown, other than his speculative assertions about what witnesses might have testified to. Both of these grounds are without merit.

20. **Prosecutorial Misconduct.** In order to grant habeas corpus relief for prosecutorial misconduct, the behavior must have been so egregious as to render the trial fundamentally unfair. *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-648 (1974). Mr. McMahan states that the prosecution "concealed evidence concerning the true location of the Holliman gun . . . ." Memorandum Brief at 21. He also claims that the prosecution coerced Josie McMahan's testimony by threatening to deport her unless she testified to implicate Mr. McMahan. *Id.* Finally, he claims that the prosecution placed the gun that was found at the site of the Lorentzen car when Mr. McMahan escaped. *Id.*

21. All of the foregoing alleged instances of misconduct are offered without any support in the record and constitute mere speculation on the part of Mr. McMahan. Unsupported speculation is not grounds for habeas relief. *Stafford v. Saffle*, 34 F.3d 1557, 1564 (10th Cir. 1994), *cert. denied*, 514 U.S. 1099 (1995).

## RECOMMENDED DISPOSITION

I recommend that the petition for writ of habeas corpus be denied and that this case be dismissed with prejudice.

Richard L. Puglisi
United States Magistrate Judge